IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JAMES WEST, #110 315,   *

   Plaintiff,   *

  v.     *   2:07-CV-747-WKW
          (WO)
BYRAN K. GAVINS, COI, *et al.*, *

   Defendants.   *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, James West, a state inmate, brings this action against Gwendolyn Mosely, Warden of the Easterling Correctional Facility ["ECF"], James DeLoach, Assistant Warden of Draper Correctional Facility ["DCF"], and Bryan Gavins, Correctional Officer at ECF.[1]   Plaintiff complains about various conditions of confinement including a denial of access to the courts and being retaliated against for filing grievances, lawsuits, and assisting other inmates with their legal matters.  Plaintiff requests declaratory and injunctive relief, expungement of a disciplinary for his violation of Rule #69, and "all other relief the court may find appropriate." [2]   (*Doc. Nos. 1, 27.*)

---

[1]These designations were accurate at the time the complaint was filed.

[2]This action is proceeding on Plaintiff's complaint filed on August 22, 2007 and his amended complaint filed on May 19, 2008.  On motion of Plaintiff, the court previously dismissed the instant complaint by order entered October 15, 2007.  (*See Doc. Nos. 6, 7.*)  Plaintiff filed a motion to reconsider and set aside the order of dismissal on November 27, 2007.  (*See Doc. No. 11.*)  The court granted the motion by order entered April 4, 2008 and directed Plaintiff to file an amended complaint. (*See Doc. No. 12.*)  Plaintiff complied with the order by filing an amended complaint on May 19, 2008.  (*See Doc. No. 27.*)

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Plaintiff that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff took advantage of the opportunity granted to file responses to the special report filed by Defendants. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); FED. R. CIV. P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary

---

[3]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

---

only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where

-4-

inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

(citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff fails to demonstrate a requisite genuine issue of material fact in order to

preclude summary judgment.  *Matsushita*, *supra*.

## II.  DISCUSSION

### *A.  Claims for Declaratory and Injunctive Relief*

Plaintiff complains about events which occurred at both ECF and DCF.  Plaintiff was incarcerated at ECF at the time he filed this complaint.  During the pendency of this action he was transferred to the J.O. Davis Correctional Facility located in Atmore, Alabama, where he is still currently incarcerated.   The transfer or release of a prisoner renders moot claims for injunctive or declaratory relief.  *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)**;** *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  As it is clear from the pleadings and records before the court that Plaintiff is no longer housed at either ECF or DCF, his requests for injunctive and/or declaratory relief against the named defendants have been rendered moot and they are due to be dismissed on this basis. *See Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

### *B. Access to Courts*

West complains that on July 27, 2007, while incarcerated at ECF, Defendant Gavins denied his request for a manila folder to store his legal materials in, denied his request for

additional legal materials, and denied his request to access the law library for two to three hours. Plaintiff states that he sought access to the law library as well as legal materials in order to prepare for an appearance in state court in a matter he had pending against the State Personnel Board. Plaintiff alleges that Defendant Gavins denied his requests because he had received orders not to give Plaintiff anything. (*Doc. No. 1 and Exh. C*.)

In response to Plaintiff's allegations, Defendant Gavins maintains that no inmates at ECF are issued manila folders. Rather, such folders must be purchased in the commissary. With regard to Plaintiff's physical ability to access the law library, Defendant Gavins states that because Plaintiff was housed in administrative and/or disciplinary segregation during his incarceration at ECF, he was not allowed physical access to the law library. He could, however, submit written requests for legal material. Defendant Gavins indicates that Plaintiff took advantage of this service and received numerous documents and other legal material during his incarceration at ECF. Additionally, Defendant Gavins states that Plaintiff received a total of 540 sheets of paper and 89 envelopes. The evidentiary material before the court supports Defendants' contention that Plaintiff was provided routine access to legal and reference material and received numerous legal kits containing paper and envelopes. (*Doc. No. 33, Exhs. 1, A, B*.)

The law is well settled that prison inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the

Supreme Court clarified and limited the right to assistance created in *Bounds*.  Specifically, the Court mandated that "an inmate alleging a violation of *Bounds* must show  actual injury" arising directly from the alleged inadequacies in the law library, legal assistance program or correctional policy.  *Lewis*, 518 U.S. at 349.  In identifying the specific right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts*** . . .  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' "  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further determined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court . . .  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court likewise rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasizes that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the

courts.  When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement . . .  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone."  *Id*. at 356-357.  "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance."  *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not . . . thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500."  *Id*. at 363.

With respect to access to law libraries, "the Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner,

and place in which library facilities are used." *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 858 (9th Cir. 1985); *see also Hoover v. Watson,* 886 F. Supp. 410, 419-20 (D.Del.1995). An inmate is not denied meaningful access to the library merely because he must wait his turn to use the library. *Lindquist,* 776 F.2d at 858.  Delaying or restricting inmates' access to a library is permissible because of security or other penological concerns. *Lewis,* 518 U.S. at 362.

In this case, Plaintiff's ability to physically access the law library was curtailed due to his placement in  segregation. He was, however,  permitted to submit law library request forms for various legal materials and  books as well as for legal kits, pens, pencils, and carbon paper.  Plaintiff made such requests on numerous occasions and they were fulfilled where available and/or allowable.  (*Doc. No. 33, Exhs. 1, A*.)   The court finds  that the limitation on Plaintiff's physical ability to enter the law library at ECF, without more, did not violate his constitutional right to access the courts. Moreover, Plaintiff has failed to demonstrate that he suffered the requisite "actual injury" to establish a constitutional violation as a result of his claims concerning restrictions on   physical access to the law library, limitations and/or restrictions on the availability of various stationery supplies, and/or the occasional unanswered law library request form.  Plaintiff has utterly and completely failed to come forward with any probative evidence that the limitations and/or restrictions about which he complains deprived him of the *capability* of pursuing, or the *opportunity* of filing, his claims in a federal or state court case; rather, Plaintiff has demonstrated that he is

proficient at presenting and arguing the claims of his choice to the courts. Plaintiff fails to allege any specific facts showing that he suffered prejudice to any pending or contemplated direct appeals, habeas corpus applications, or non-frivolous civil rights claims. Consequently, there is nothing before the court which indicates that the actions about which Plaintiff complains hindered his efforts to pursue non-frivolous legal claims, and therefore, he has failed to show the requisite injury. *Lewis*, 518 U.S. at 356. Summary judgment is, therefore, due to be granted in favor of Defendants on Plaintiff's access to courts claim. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

## C. The Segregation Claim

Plaintiff arrived at ECF on December 14, 2006. On December 20, 2006 he was placed in administrative segregation after claiming that inmate Richard Edwards was an enemy. Although inmate Edwards denied being Plaintiff's enemy, prison officials reclassified Plaintiff to administrative segregation in medium custody due to his refusal to live in general population.[4]   (*Doc. Nos. 1, 27; Doc. No. 33, Exh. 3*.) To the extent Plaintiff complains that Defendant Mosley violated his Eighth and Fourteenth Amendment rights by continuing to house him in administrative segregation during his incarceration at ECF based on his claim of an enemy situation, he is entitled to no relief.

---

[4]In his complaint, Plaintiff states that he was placed in administrative segregation at Easterling because he refused to sign a living agreement "with an inmate assigned to Easterling." (*Doc. No. 1 at pg. 4*.) In his affidavit submitted in support of his opposition, Plaintiff more specifically indicates that he refused to sign a peace treaty with inmate Richard Edwards, an inmate Plaintiff contends with whom he could never live in general population.  (*Doc. No. 39, Exh. 67*.)

### I. Cruel and Unusual Punishment

The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). In order to demonstrate an Eighth Amendment violation with respect to conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The objective component requires an inmate to prove the he was denied the "minimal civilized measure of life's necessities." *Id*. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004). The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk. *Farmer*, 511 U.S. at 834, 837.

The condition about which Plaintiff complains in the instant action does not amount to cruel and unusual punishment. Plaintiff fails to establish that he suffered a sufficiently serious constitutional deprivation which may be considered "extreme." *See Chandler*, 379 F.3d at 1290. Plaintiff's assignment to administrative segregation in a cell he shared with other inmates, without more, is not an "extreme" prison condition that is of sufficient severity to implicate the Eighth Amendment. *Id*.; *Rhodes*, 452 U.S. T348 (overcrowding alone does not rise to the level of a constitutional violation). In light of the foregoing, the court finds that Defendants are entitled to summary judgment on Plaintiff's Eight Amendment claim.

### ii. *Due Process*

To prevail on a claim that a housing assignment to administrative segregation violates a prisoner's constitutional right to due process, the inmate must establish that he has a liberty interest in being free from confinement on administrative segregation. *See Sandin v. Conner*, 515 U.S. 472, 487  (1995) (holding that a convicted inmate who had been placed on disciplinary segregation in a prison's Special Housing Unit ("SHU") for 30 days had no cognizable procedural due process claim because he had no liberty interest in being free from such confinement).   Under *Sandin*, a prisoner possesses a liberty interest under the Constitution when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." 515 U.S. at 484. A prisoner's confinement on administrative segregation for non-punitive reasons does not implicate a liberty interest because such segregation falls within the terms of confinement. *Id*.   An inmate's placement on  disciplinary segregation may implicate a liberty interest but only if the placement substantially differs from the ordinary conditions of confinement. *Id*. at 486 (noting that the inmate's disciplinary confinement did "not exceed similar, but totally discretionary, confinement in either duration or degree of restriction").

To the extent Plaintiff claim that his assignment to administrative segregation during his incarceration at Easterling violated his right to due process, such claim  fails to implicate any protected liberty interest to which he is entitled.   This is so because Plaintiff has not alleged that his confinement presents "the type of atypical, significant deprivation [that]

might conceivably create a liberty interest." *Sandin* , 515 U.S. at 486. Following the reasoning of the Supreme Court in *Sandin*, the undersigned concludes that the Court's decision in *Sandin* makes clear that the Due Process Clause is implicated only when the actions taken against an inmate represent a "dramatic departure" from the ordinary conditions of incarceration.  Where the loss suffered by Plaintiff amounts to a grievous loss of a "substantive interest" the protection of the Due Process Clause is invoked.

In the instant cause of action, Plaintiff's complaints regarding his assignment to administrative segregation do not represent a "dramatic departure" from the ordinary conditions of confinement. *Sandin*, *supra*. There is no showing that Plaintiff's placement on administrative segregation was materially different from those conditions imposed on inmates on other forms of purely discretionary segregation nor has Plaintiff demonstrated that the conditions on administrative segregation, compared with conditions in the general population, created "a major disruption" in his environment or that the length of his sentence was affected. *See Sandin* at 486-87 (in determining that plaintiff possessed no liberty interest in avoiding disciplinary segregation the Court in *Sandin* relied on three factors: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of the plaintiff's sentence was not affected.).  Because Plaintiff's assignment to administrative segregation at ECF was "within the range of confinement to be normally

expected" by prison inmates "in relation to the ordinary incidents of prison life," Plaintiff had no protected liberty interest in being free from confinement thereon.[5]

### D.  The Disciplinary Infraction

Plaintiff was issued a disciplinary infraction on January 10, 2007 for a violation of Rule #69 - destroying, stealing, altering, damaging State Property. To the extent Plaintiff's complaint asserts an allegation that issuance of the disciplinary was erroneous,  the undersigned concludes such claims does not implicate the protections of the Due Process Clause.

According to Defendants' evidentiary submissions, Plaintiff received a disciplinary notice on January 10, 2007 for violating Rule #69.  According to the testimony of Defendant Gavins given at the disciplinary hearing:

> [Gavins] was advised by Warden Mosley that she received a complaint from Inmate James West, written on a form from the Library called a 32.6 Form, which is used by inmates to respond back to court.  I questioned Inmate James West about misusage of the form, and Inmate James West state that he has always wrote complaints on the forms, and will continue to write on the forms. I advised Inmate West that he would receive disciplinary action for Rule Violation #69 - Destroying, Stealing, Disposing, Altering, Damaging, or Selling State Property.

(*Doc. No. 33, Exh. 3 at Attachment.*)

No testimony was received from Plaintiff as the disciplinary report reflects that he had to be removed from the hearing due to disorderly behavior, loud outbursts, and excessive

---

[5]Plaintiff's contention that his placement on administrative segregation was retaliatory in motive is discussed in § II(F).

scribbling on the disciplinary form.  After the hearing, the hearing officer found Plaintiff guilty of violating Rule #69 and sanctioned him to 45 days  disciplinary segregation and 45 days loss of privileges which were subsequently modified to 30 days disciplinary segregation and 30 days loss of privileges.  (*Id.*)  Although Plaintiff disputes Defendants' description of his behavior at the disciplinary hearing and maintains he previously used the forms at issue without incident, here, the court finds that Plaintiff's due process challenge lacks merit as the sanctions imposed upon him do not implicate any constitutionally protected interest.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  Thus, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause.  In *Sandin*, 515 U.S. 472 , the Court abandoned the *Thompson*,[6] *Olim*,[7] and *Hewitt*[8] methodology for determining the existence of a liberty interest.  Under the methodology of those cases, a court ascertained whether a state created a liberty interest protected by the Due Process Clause by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion."  In its renunciation of prior case law, the Court held that federal courts must look to the nature of the deprivation rather

---

[6]*Kentucky Department of Corrections v. Thompson*, 490 U.S. 454 (1989).

[7]*Olim v. Wakinekona*, 461 U.S. 238 (1983).

[8]*Hewitt v. Helms*, 459 U.S. 460 (1983).

than statutory or regulatory language to determine if a state created a liberty interest.

> Following *Wolff*,[9] we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-484 (footnote added) (citations omitted).   Moreover, the Court

specifically rejected the contention that any action taken by correctional officials as a

punitive measure encroaches upon a liberty interest protected under the Due Process Clause.

*Id.* at 484.

"Discipline by prison officials in response to a wide range of misconduct falls within

the expected parameters of the sentence imposed by a court of law."  *Sandin*, 515 U.S. 485.

Plaintiff's temporary assignment to thirty days of disciplinary segregation and thirty days loss

of privileges "though concededly punitive, does not represent a dramatic departure from the

basic conditions" of the sentence imposed upon him.  *Id.*  In light of the foregoing, it is clear

that the actions taken against Plaintiff did not "impose[] atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  Consequently,

Plaintiff's due process claim based on issuance of the disciplinary infraction fails.[10]

---

[9]*Wolff v. McDonnell*, 418 U.S. 539 (1974).

[10]Regarding Plaintiff's allegation that he was charged with a false disciplinary infraction, the court notes that a prison inmate has no *per se* constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Rather, an inmate has the right not to be deprived of a protected

*E. The Transfer Claim*

Plaintiff maintains that he was housed at Draper for five months and then transferred to ECF. He contends that Warden DeLoach had him transferred from Draper to ECF because he assisted other inmates with their legal activities and because he complained to prison personnel and state officials about the conditions under which he was housed. (*Doc. Nos. 1, 27*.) Defendant DeLoach denies Plaintiff's allegations. He maintains that he discussed with Plaintiff his complaint regarding prison conditions and prison personnel and found them to be baseless. Defendant DeLoach affirms that Plaintiff's complaints and grievances did not result in any punitive action being taken against him. (*Doc. No. 33, Exh. 2*.)

To the extent Plaintiff's claim asserts a challenge to his transfer among penal institutions, the law is well-settled that prisoners do not have a constitutional right to remain housed in any particular prison or region  or be transferred to a penal institution of their own choosing.[11]  *See Meachum v. Fano,* 427 U.S. 215, 225 (1976)  ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has

_____

liberty interest without due process of law. *Id.* Here, Plaintiff was not deprived of any protected liberty interest as the sanctions imposed as a result of the disciplinary infraction did not implicate a liberty interest protected by the Fourteenth Amendment. *See Sandin ,* 515 U.S. 472. Consequently, insofar as Plaintiff's contention that prison personnel fabricated a disciplinary report is concerned, such claim does not provide a basis for relief under § 1983. Further, Defendants do not admit that they falsely issued Plaintiff a disciplinary report, and his mere contention that the disciplinary is false without evidence of its falsity is insufficient. *See Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11ᵗʰ Cir. 1982).

[11]Plaintiff's allegation that Warden DeLoach transferred him in retaliation for his exercise his First Amendment rights is discussed in § II(F).

more than one correctional institution."); *Olim v. Wakinekona,* 461 U.S. 238 (1983) (holding that transferring a prisoner from a Hawaii state prison to a California prison did not implicate a liberty interest protected by the Due Process Clause). Thus, the fact that Plaintiff was transferred from one correctional institution within the State of Alabama to another fails to implicate any constitutional right to which he is entitled. Defendants are, therefore, entitled to summary judgment on Plaintiff's institutional assignment claim.

### F. The Retaliation Claim

Plaintiff maintains that the conduct and/or actions taken by Defendants Mosley and DeLoach with respect to the claims presented against them in the instant complaint and amended complaint, as discussed *infra*, were motivated by their desire to retaliate against him for his filing of civil actions in state and/or federal court, for his filing of letters, complaints, and/or grievances with prison and/or state officials regarding the conditions under which he was housed, and/or for assisting other inmates with their legal activities. With respect to his claim of retaliation against Warden DeLoach, Plaintiff asserts that Warden DeLoach had him transferred from Draper to ECF on December 14, 2006 because of his conduct in submitting the following grievances and complaints while at Draper;[12]

> • On October 16, 2006 Plaintiff prepared a memo directed to Commissioner Allen's attention wherein he requested that the Commissioner investigate acts of violence inflicted on inmates at Draper. The text of the

---

[12]Plaintiff indicates that on July 3, 2006 he was transferred to Draper from the Bibb County Correctional Facility where he had been housed since May 3, 2003. (*Doc. No. 39, Exhs. C, 67.*) Plaintiff asserts that his transfer from Bibb to Draper was retaliatory in nature due to his filing of administrative grievances while housed at Bibb. (*Id.*)

memo reflects that copies were provide to Governor Bob Riley, Senator Richard Shelby, and the United States Marshal;

    •  On October 24, 2006 Plaintiff prepared a memo directed to Commissioner Allen's attention wherein he complained about the living conditions at Draper.  Plaintiff advised Commissioner Allen that he was submitting the memo to the Commissioner's attention because there existed no internal administrative remedies to correct or address the conditions about which he complained. The text of the memo reflects that a copy was provided to Warden DeLoach;

    • On November 6, 2006  Plaintiff submitted a memo to Commissioner Allen's attention wherein he requested that the Commissioner consider implementing a policy requiring that videotapes be made of incidents where any degree of force is used.  The text of the memo reflects that Warden DeLoach was provided with a copy of the memo;

    •  On December 6, 2006 Plaintiff submitted a memo to Warden DeLoach's attention complaining that prison personnel had failed to provide him with notary services in violation of prison regulations.  The text of the memo reflects that copies were provided to Phyllis Billups, Assistant Warden at Draper, the Honorable Charles Price, Commissioner Richard Allen, and Kim Thomas, legal counsel for the Alabama Department of Corrections.[13]

(*Doc. No. 39, Exhs. 56, 67, 68, 61.*)

    On December 6, 2006 Plaintiff spoke with Warden DeLoach for approximately 30 minutes or more regarding his memos/grievances.  Plaintiff asserts that Warden DeLoach

---

[13]Plaintiff's evidentiary material reflects that he received a letter from Senator Shelby dated November 7, 2006. Senator Shelby's letter informed Plaintiff that the ADOC had been contacted and asked to respond to Plaintiff's concerns about living conditions at DCF.  (*Doc. No. 39, Exh. 59.*) Plaintiff next received correspondence from Commissioner Allen on December 12, 2006 informing him that Warden DeLoach had been contacted in response to Plaintiff's letter to Senator Shelby regarding DCF's living conditions.  The Commissioner advised Plaintiff that he had been informed that the allegations contained in Plaintiff's prison conditions memo had been investigated and found to be without merit. The Commissioner's letter further advised Plaintiff that by his own admission to Warden DeLoach, he did not want to be assigned to DCF and if he filed enough complaints, Warden DeLoach would transfer him back to Bibb County Correctional Facility where Plaintiff wanted to be. (*Doc. No. 39 at Exh. 62.*)

agreed to meet again with him the next day for the purpose of having Plaintiff provide him with the names of witnesses who had witnessed and/or been victims of incidents of excessive force by correctional officers against inmates which was the subject of one of Plaintiff's memos/grievances. After the December 7 meeting, Plaintiff states that he next saw Warden DeLoach on December 12, 2006. At that meeting, Plaintiff contends that Warden Deloach had copies of the memos Plaintiff had sent to Commissioner Allen and/or Senator Shelby and, according to Plaintiff, informed him that he did not "appreciate being placed in this position."[14]  Plaintiff maintains that Warden DeLoach thereafter contacted Warden Mosley and secretly arranged his transfer to ECF.  Plaintiff argues that the "secretive" transfer occurred because he exercised his First Amendment right to assist others in filing complaints/grievances [and] petitioning the Commissioner and the courts for redress." (*Doc. No. 39, Exhs. C, 67*.)

Warden DeLoach denies as untrue and without merit Plaintiff's allegation of a retaliatory transfer due to his filing of administrative complaints.  Warden DeLoach states that he discussed Plaintiff's complaints with him on several occasions. He found Plaintiff's complaints to be baseless but maintains that his complaints and grievances did not result in any punitive action being taken against him. (*Doc. No. 33, Exh. 2*.)

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S.

---

[14]As noted, Plaintiff had provided carbon copies of his October 24, 2006, and November 6, 2006, memos to Warden DeLoach.

396, 405, 94 S.Ct. 1800, 1807 (1974)].   As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.'   *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...."   *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321(1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.' " *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), quoting *Pell*, 417 U.S. at 822.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.  Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their grievances, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of

-23-

internal security within the corrections facilities themselves." *Id.* at 823; *Bell,* 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). It is, therefore, clear that preservation of security and order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*,

-24-

433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted).... [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

To proceed on a claim for retaliation under the First Amendment and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532

-25-

F.3d at 1278.

As explained, Plaintiff alleges Warden DeLoach retaliated against him for expressing, through written memos, his frustration with various prison conditions as well as his advocation of a new policy for handling excessive force incidents involving inmates and guards, thus satisfying the first element of his retaliation claim. *Smith*, 532 F.3d at 1277. The second element requires Plaintiff to demonstrate that his transfer to ECF "would likely deter a [prisoner] of ordinary firmness" from expressing his political beliefs. *Id*. This "presents an objective standard and a factual inquiry." *Id*. Based on the evidentiary material before the court, and assuming, *arguendo*, that Plaintiff has met this standard, Plaintiff fails to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse actions of Warden DeLoach.

The causal connection inquiry focuses on the "subjective motivation of the defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendant[] w[as] subjectively motivated to discipline" Plaintiff for expressing his discontent with various prison conditions. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of

production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399 (referencing the *Mt. Healthy* motive analysis).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).  This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

Here, Plaintiff makes the conclusory and speculative assertion that Warden DeLoach

-27-

reached a secret agreement with Warden Mosley to transfer him to Warden Mosley's custody because he sent memos to prison officials in which he expressed his dissatisfaction with various prison conditions, shared his ideas about handling excessive force incidents, and complained about the unavailability of notary services on one occasion. Plaintiff has submitted no direct evidence that his correspondence with prison officials was the motivating factor in Warden DeLoach's actions, and nothing in any of Plaintiff's responses suggests the transfer was a mere pretext to punish Plaintiff for voicing various grievances. Plaintiff accepted Warden DeLoach's invitation to discuss the content of his memos/grievances and they did so. After discussing Plaintiff's concerns with him, Warden DeLoach found no merit to Plaintiff's grievances and complaints. Further, Warden DeLoach, as noted, adamantly denies that any punitive action occurred as a result of Plaintiff's assertions expressed in his memos/grievances.

Here, the court finds that Plaintiff offers only his conclusory allegation of ultimate fact that Warden DeLoach retaliated against him for expressing his frustration with prison conditions and for expressing ideas about how to handle certain prison incidents. He, therefore, has not met his burden of showing a triable First Amendment retaliation claim. Plaintiff has not shown any connection to his having engaged in protected First Amendment activities and the conduct of Warden DeLoach. Plaintiff has not shown that his transfer from Draper to ECF was to punish him for writing grievances. The record before the court is devoid of admissible or potentially admissible evidence, direct or otherwise, from which

a reasonable fact finder could infer the requisite motivating factor. Additionally, the circumstances, when taken as a whole, do not support making such an inference. Plaintiff has failed to come forward with sufficient evidence showing that he was subjected to an institutional transfer because he engaged in protected First Amendment activity, and thus, there is no genuine dispute of material fact on this claim. Consequently, Warden DeLoach is entitled to summary judgment on the First Amendment claim as Plaintiff fails to establish by appropriate evidence a causal relationship between the alleged protected activity and any adverse action taken against him.

### ii.  Warden Mosley

Plaintiff asserts that Defendant Mosley punished him after he submitted a grievance to her wherein he complained about a denial of adequate medical treatment. Plaintiff maintains that the punishment consisted of issuance of a disciplinary which resulted in his placement in disciplinary segregation and loss of privileges. Plaintiff further complains that he remained  housed in segregation at ECF in retaliation for his filing of grievances. (*Doc. Nos. 1, 27.*)

Defendant Mosley denies punishing Plaintiff for filing a grievance regarding a denial of medical treatment by medical staff. Rather, Defendant Mosley asserts that Plaintiff was issued a disciplinary on January 10, 2007  for violating an institutional rule which prohibits destroying, stealing, disposing, altering, or damaging state property for which he was found

guilty.[15]  Defendant Mosley further states that Plaintiff received medical care from medical

personnel as needed and remained housed in administrative segregation because he refused

to live in population claiming that  inmate  Richard Edwards was an enemy of his with whom

he could not live in population. Although inmate Richards denied being Plaintiff's enemy,

Warden  Mosley  asserts  that  Plaintiff  was  reclassified  to  administrative  segregation  in

medium custody because he refused to live in general population.  (*Doc. No. 33, Exh. 3*.)

Plaintiff argues in his opposition that, in addition to  Defendant Mosley causing the

January 3, 2007 disciplinary to be issued against him in retaliation for his December 26, 2006

grievance concerning a failure to receive adequate medical treatment, the disciplinary was

also  issued  in  retaliation  for  a  grievance  he  submitted  on  January  2,  2007  wherein  he

complained about being assigned to a cell housing three inmates when regulations require

no  more  than  two  men  to  a  cell.  (*Doc. No. 39, Exh. 70*.)  He maintains that Defendant

Mosley does not refute his contention that he was punished for filing grievances, but rather,

---

[15]The evidentiary material before the court reflects that Defendant Mosley questioned Defendant Gavins on  January 3, 2007 about Plaintiff's use of the back side of a Rule 32.6 form to submit a grievance to her on December 26, 2006. (*See Doc. No. 33, Exh. 3, Doc. No. 39, Exh. 33*.)  Defendant Mosley states that the pre-printed Rule 32 forms are only for inmates' use when filing certain legal matters in state court.  (*Doc. No. 33, Exh. 3*.) Following his conversation with Defendant Mosley, Defendant Gavins questioned Plaintiff about his use of the form to write a grievance to which Plaintiff replied that he had always used such forms to write complaints and that he would continue to use them.  (*Id*.)  On January 10, 2007 Defendant Gavins issued Plaintiff a disciplinary for violating Rule #69 - destroying, stealing, disposing, altering, damaging state property.  (*Id., Exh. 3 at Attachment*.)  The circumstances for the disciplinary stated that "[Plaintiff] did misuse legal papers that w[ere] issued to you for legal use only.  You did write on the back of a form 32.6 that is used for the Court."  (*Id*.)  According to the disciplinary record, Plaintiff was removed from the disciplinary hearing due to his display of disorderly behavior and he, therefore, gave no testimony.  (*Id*.)  The hearing officer ultimately found Plaintiff guilty of violating Rule #69 based on the arresting officer's testimony that Plaintiff misused legal papers that were  issued to him for legal use only by writing an internal grievance on the back of a  Rule 32.6 form which is used for state court filings.  (*Id*.)  Plaintiff was sanctioned to thirty days disciplinary segregation and thirty days loss of privileges.  (*Id*.)

-30-

claims that she simply asserts that he was not denied adequate medical care.[16] (*Doc. No. 39.*)

Plaintiff makes the conclusory assertion that Defendant Mosley initiated a disciplinary because he filed a grievance with her concerning the conditions of his confinement and the adequacy of medical care he received. Plaintiff, however, has submitted no direct evidence that his stated grievances were the motivating factor in Defendant Mosley's actions and nothing in any of Plaintiff's responses suggests the disciplinary and related actions were a mere pretext to punish him for filing a grievance. Defendant Mosley also denies this allegation and argues that the adverse action about which Plaintiff complains occurred due to his violation of institutional rules and regulations, not because of the grievances he submitted to her. (*Doc. No. 33, Exh. 3.*)

Plaintiff has not met his burden in showing a triable First Amendment retaliation

---

[16]Plaintiff asserts in his opposition that he filed a complaint with the Attorney General for the State of Alabama in September 2007 (Plaintiff refers the court to Exhibit 69 which is a copy of correspondence to Attorney General Troy King dated January 7, 2008) which prompted Defendant Mosley to "step up the frequency of retaliatory acts and which acts resulted in the use of excessive force by Mosley's subordinates." Plaintiff further asserts that his exhibits reflect that he suffered punishment not because he was housed in segregation but because he had filed complaints against Defendant Mosley for violating administrative regulations and statutory law and she retaliated by housing him in an 8'x10' cell with another inmate which had no running water in the sink for approximately two weeks in July 2007. Plaintiff contends that he was subjected to additional retaliatory acts where he was handcuffed tightly and remained so handcuffed for 15-30 minutes before being escorted to the shower area and where he experienced incidents of mail mishandling and misplacement. (*Doc. No. 39.*) To the extent these assertions present additional allegations against Defendant Mosley than what Plaintiff presented against her in his complaint, as amended, the undersigned finds that those claims are not properly before the court as Plaintiff may not amend his complaint except through compliance with Rule 15, *Federal Rules of Civil Procedure* ( *e.g.*, he may not simply raise new claims in a response to Defendants' dispositive motin). *See, e.g., Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004); *Al- Amin v. Donald*, 165 Fed. Appx. 733, 740 (11th Cir. 2006) ("A defendant is not required to 'infer all possible claims that could arise out of the facts set forth in the complaint.' ... 'A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.' ") (*quoting Gilmour*, 382 F.3d at 1315).

claim. Plaintiff offers only his conclusory allegation of ultimate fact that Defendant Mosley retaliated against him for voicing his frustration with prison conditions.  This allegation is insufficient to defeat summary judgment for the reasons previously discussed, *infra*. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.  The record before the court lacks admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor. Plaintiff has not shown any connection to his having engaged in protected First Amendment activities and the conduct of the Defendant Mosley. He  has not shown that issuance of the January 3, 2007 disciplinary was to punish him for writing grievances and not because of his own behavior in violating jail regulations. There is not a genuine dispute of material fact on this claim. Plaintiff has failed to come forward with sufficient evidence showing that he was subjected to adverse consequences because of protected First Amendment activity.  Consequently, Defendant Mosley is entitled to summary judgment on Plaintiff's  First Amendment claim as he fails to establish by appropriate evidence a causal relationship between the alleged protected activity and any adverse action taken against him.  *Waddell*, 276 F.3d at 1278-1279.

### G.  The Conspiracy Claim

To the extent Plaintiff's complaint, as amended, may be considered to present an allegation that Defendants conspired with each other to  violate his constitutional rights with respect to the conduct about which he complains in the instant lawsuit, he is entitled to no relief.   Vague and conclusory allegations of conspiracy will not support a § 1983 claim.

*Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Plaintiff must make factual "allegations of combination, agreement, or understanding among all or between any of the defendants [or co-conspirators] [to] plot[], plan[], or conspire[] together to carry out the alleged chain of events." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3rd Cir. 1974); *see also Lawline v. American Bar Association*, 738 F. Supp. 288, 295 at n. 7 (N.D. Ill. 1990), *aff'd,* 956 F.2d 1378 (7th Cir. 1992); *Carreon v. Baumann*, 747 F. Supp. 1290, 1291-92 (N.D. Ill. 1990). Mere naked assertions or boilerplate allegations concerning a conspiracy are insufficient to state a viable constitutional claim. *See Phillip v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984); *Theis v. Smith*, 676 F. Supp. 874, 877 (N.D. Ill. 1988).

Here, no specific facts have been presented which would support a claim that Defendants acted through a "combination, agreement, or understanding" or "plotted," "planned" or "conspired" to deprive Plaintiff of his civil rights. There is nothing before the court which indicates that Defendants entered into a conspiracy to violate Plaintiff's constitutional rights with respect to the allegations presented in this proceeding. The undersigned, therefore, concludes that, to the extent Plaintiff asserts such, his generalized allegations of a conspiracy are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Fullman*, 739 F.2d at 556-557.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Plaintiff's requests for injunctive and declaratory relief be DISMISSED as moot;

2. Defendants' motion for summary judgment (*Doc. No. 33*) be GRANTED;

3.  Judgment be ENTERED  in favor of Defendants and against Plaintiff;

4.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 25, 2010**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done, this 12th day of May 2010.


 /s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE